Order Entered.

*Patrick M. Flatley*

Patrick M. Flatley
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROCK BRANCH MECHANICAL, INC., | ) | Case No. 16-bk-30531 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| _____ | ) | |
| | ) | |
| ROBERT L. JOHNS, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 17-ap-3015 |
| | ) | |
| WESTERN SURETY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Pending before the court are cross motions for summary judgment. Robert L. Johns, the Chapter 7 trustee administering the bankruptcy estate of Rock Branch Mechanical, Inc. (the "Debtor"), seeks to avoid a security interest recorded by Western Surety Company on certain personal property of the Debtor or the proceeds therefrom.[1] Western Surety opposes the trustee's motion and seeks summary judgment in its own right. It asserts, among other things, that its interest in the subject property is unavoidable based upon the Debtor's assignment of certain property to it more than ninety days before the Debtor filed its bankruptcy petition.

---

[1] The record is unclear whether the trustee seeks to avoid Western Surety's lien upon the Debtor's personal property, the proceeds emanating from such property, which the Debtor allegedly liquidated prepetition, or some combination thereof. However, any distinction in that regard is immaterial to the court's limited disposition of the motions for summary judgment.

1

For the reasons stated herein, the court will grant partial summary judgment to the trustee and reserve disposition of Western Surety's motion pending supplemental briefing.[2]

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of proof to establish that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden.  *Id*. at 323.  Material facts are those necessary to establish the elements of the cause of action.  *Anderson*, 477 U.S. at 248.  Thus, the existence of a factual dispute is material — thereby precluding summary judgment — only if the disputed fact is determinative of the outcome under applicable law.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant."  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); see also *Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial.  *Celotex Corp.*, 477 U.S. at 322-23.  The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Shaw*, 13 F.3d at 798.  However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial."  *Anderson*, 477 U.S. at 249-50.  Nor should the court make credibility determinations.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  If

---

[2] The allegations in Western Surety's motion essentially amount to a counterclaim – that despite the trustee's anticipated avoidance, Western Surety possesses a superior right in the subject property by virtue of an assignment.  Based upon the court's disposition herein, and because Western Surety did not plead its claim as a counterclaim, the court will convene a telephonic hearing to determine the best way to address Western Surety's claim because the record before the court is otherwise insufficient.

no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II. BACKGROUND

On May 9, 2012, the Debtor and Western Surety executed a General Agreement of Indemnity ("GAI").[3]  Included in the GAI are two provisions that are central to the parties' dispute. Paragraph nine—"Consequences of Events of Default"—provides, among other things, that the Debtor upon default "assign, transfer, and set over to [Western Surety] all of their rights under the Bonded Contracts, including . . . ii. all machinery, plant, equipment, tools and materials upon the site of the work or elsewhere for the purposes of the Bonded Contracts, including all material ordered for the Bonded Contracts . . . ."  Paragraph ten—"Security Interest;UCC"—provides that "[a]s security for their obligations under this Agreement, upon an Event of Default the [Debtor] grant[s] [Western Surety] a security interest in all property, rights, and assets of the [Debtor], including, but not limited to, all inventory, equipment, . . . , contract rights and proceeds . . . ."  It goes on to state that the "Agreement shall constitute a Security Agreement and a Financing Statement for the benefit of [Western Surety]," and the "[Debtor] authorize[s] [Western Surety] . . . to file this Agreement . . . to describe the Collateral covered by such filing."

Among the Bonded Contracts was the Debtor's contract to serve as a subcontractor to the general contractor—Radford & Radford, Inc.—on the construction of the Student Center at West Virginia School of Osteopathic Medicine in Lewisburg, West Virginia (the "Project").   In furtherance of its contract in that regard, the Debtor contracted with various other subcontractors, laborers, and materialmen.  The parties stipulate that the Debtor ceased operating and abandoned its work on the Project no later than May 9, 2016.  Ultimately, Western Surety paid various subcontractor claims against the Debtor's bond and provided Radford & Radford with a substitute contractor to complete the Project.  On September 9, 2016, Western Surety filed a UCC financing statement with the West Virginia Secretary of State ("WVSOS") claiming a lien on the Debtor's assets, and the Debtor filed its voluntary Chapter 7 petition on November 15, 2016.

---

[3]  To be clear, the Debtor was not the only "Indemnitor" as defined in the GIA.  In disposing of the parties' dispute, however, the court focuses on only the Debtor's role in that regard because it and Western Surety are the only necessary parties before the court.

### III. ANALYSIS

The trustee asserts that he is entitled to summary judgment on his action under § 547 of the Bankruptcy Code because Western Surety's perfection of its security interest in the Debtor's property constitutes a preferential transfer. He therefore asks the court to avoid Western Surety's lien against the property and any proceeds therefrom. Western Surety opposes the trustee's motion and asserts that it is entitled to summary judgment because its interest in the Debtor's collateral predated the 90-day preference period upon which the trustee relies. Specifically, Western Surety contends that the relevant transfer here—the assignment of the Debtor's personal property, among other things—occurred upon the Debtor's default based upon provisions of the GIA; not when it recorded its security interest with the WVSOS. As a result, Western Surety contends, the trustee is not entitled to summary judgment because its interest in the Debtor's property arose before the 90-day preference period and the transfer at that time was not for an antecedent debt because the debt arose simultaneous with the transfer.

Having considered the parties' respective arguments, the court finds it appropriate to grant the trustee summary judgment on the narrow scope of his complaint and order supplemental briefing on Western Surety's motion for summary judgment. Specifically, the gist of Western Surety's opposition to the trustee's motion and the basis for its own motion is that a transfer—the assignment under the GIA—occurred before the 90-day preference period provided by § 547(b)(4)(A) of the Bankruptcy Code. Western Surety asserts that the assignment defeats the trustee's claim both because it is beyond the 90-day lookback and because it occurred simultaneously with the creation of the Debtor's debt to Western Surety. Seemingly every argument made by Western Surety to defend the trustee's motion relates to its purported assignment.[4]  It does not, for instance challenge the trustee's motion vis-à-vis the security agreement it recorded on September 9, 2016. Western Surety's only argument that departs from its contentions regarding the purported assignment is that its "security interest was perfected upon its creation . . ." based upon W. Va. Code § 46-9-309(12); but that statute is unavailing because it provides for perfection upon attachment of "an *assignment* for the benefit of all creditors of the

---

[4] For instance, even its assertion of an equitable lien and its reliance upon *Dwyer v. Ins. Co. of the State of Pennsylvania (In re Pihl, Inc.)*, 560 B.R. 1 (Bankr. D. Mass. 2016), is based upon the fact that its interest in the subject property arose as a property interest by virtue of an assignment provided by paragraph nine of the GIA and not a security interest by virtue paragraph 10 of the GIA.  Notably, *Dwyer* involved subrogation, which the court perceives is not at issue here.

transferor . . . ."  Western Surety's security interest, as recorded with the WVSOS, was not for the benefit of *all* creditors.  Moreover, although it may be said that the assignment was for the benefit of some creditors, including Western Surety, Western Surety's reliance upon § 46-9-309(12) is misplaced because the record is clear that its assignment and its lien were not for the benefit of all the Debtor's creditors.  The court therefore sees no basis upon which to deny the trustee summary judgment insofar as he seeks to avoid Western Surety's September 9, 2016 recordation of its security interest.

Notably, however, the purported transaction upon which Western Surety relies is separate and distinct from the recordation of its security interest that the trustee seeks to avoid.  For instance, neither the trustee's complaint nor his motion for summary judgment seek to avoid any purported assignment; and for good reason given that the trustee asserts that the assignment is immaterial because it did not convey to Western Surety any of the property liquidated prepetition or held now by the trustee.  The court, however, finds the record in that regard to be incomplete and believes that the parties have not fully briefed Western Surety's argument regarding the legal effect and relevance of the assignment language in paragraph nine of the GIA.  For example, does it provide Western Surety a defense to the ultimate relief sought by the trustee by constituting a transfer beyond the 90-day lookback period in § 547 and one for which no antecedent debt existed?  Additionally, the assignment language seems to be limited to "rights under the Bonded Contracts, including . . . ii. all machinery, plant, equipment, tools and materials upon the site of the work or elsewhere for the purposes of the Bonded Contracts . . . ."  The trustee contends that the property and proceeds held by the trustee are beyond the scope of the assignment given the language "under the Bonded Contracts" and "for the purposes of the Bonded Contracts."  Western Surety counters, for instance, that the assignment is not so narrow because there were other Bonded Contracts, but the record at this stage does not bear that out.

The court therefore needs additional briefing, if possible, regarding the effect and scope of the assignment and what property is held by the trustee; or it may simply be an issue for which disputed material facts exist.  For instance, the arguments raised by Western Surety essentially amount to a contention that the GIA transferred property interests—not simply a security interest— in certain, if not all, of the Debtor's personal property upon the Debtor's default.  Additionally, the parties have not addressed the temporal aspect of the assignment.  Was it perpetual or did it dissolve upon the completion of the Bonded Contracts?  Again, this analysis may also involve a

consideration of the scope of the term "Bonded Contracts," which the record does not currently elucidate. The court therefore finds that it cannot grant summary judgment to Western Surety based upon its argument in that regard.

## IV. CONCLUSION

Based upon the foregoing, the court finds that the trustee is entitled to summary judgment on the explicit allegations of his complaint seeking to avoid the lien recorded by Western Surety within the 90-day preference period. The court believes that its order in that regard, however, does not grant the trustee ultimate relief based upon arguments raised by Western Surety. Similarly and consistent with the court's analysis herein, the court cannot grant Western Surety summary judgment based upon the record before it. Rather, the court will schedule a telephonic pretrial conference to discuss how to proceed with Western Surety's claim. For instance, it may be that supplemental briefing regarding the effect, scope, and duration of the purported assignment is sufficient to resolve the extant dispute. If not, the court may need to reserve Western Surety's claim for factual development at trial.